623 So.2d 167 (1993)
Melanie EICHE, Lula Tanner and Isiah Meyers
v.
EAST BATON ROUGE PARISH SCHOOL BOARD.
No. CA 92 1134.
Court of Appeal of Louisiana, First Circuit.
July 2, 1993.
Writ Denied November 12, 1993.
Charles S. McCowan, Jr., Baton Rouge, for plaintiff-appellee Melanie Eiche, Lula Tanner and Isiah Meyers.
*168 Robert L. Hammonds, Baton Rouge, for defendant-appellant East Baton Rouge Parish School Bd.
Before EDWARDS, SHORTESS and WHIPPLE, JJ.
WHIPPLE, Judge.
Plaintiffs, Melanie Eiche, Lula Tanner and Isiah Meyers, are tenured school teachers employed by the East Baton Rouge Parish School Board (School Board). It is undisputed by the parties that during the summer of 1991, plaintiffs and the School Board entered into written employment contracts for the 1991-1992 school year.
After the contracts were executed by the parties, and prior to the first school day, the School Board announced that due to financial difficulties, it would close all public schools for three days, to be announced in the future, and would reduce employees' salaries accordingly.
The first announced closure date was January 13, 1992. Plaintiffs nonetheless appeared for work on January 13, 1992. The School Board did not pay employees' salaries for that date. On January 16, 1992, plaintiffs filed a petition styled "Petition for Damages for Breach of Contract, Declaratory Judgment and Other Relief." Plaintiffs' petition alleged that the school closures and reduction in salaries was a breach of their employment contracts with the School Board and in violation of the Louisiana Teacher Tenure Law, LSA-R.S. 17:441 et seq.
Defendant answered, generally denying the allegations of plaintiffs' petition and asserting that the School Board was within its rights under the provisions of the employment contracts in adjusting plaintiffs' salaries.
Plaintiffs filed a motion for summary judgment on the issue of whether the School Board violated their rights under the Louisiana Teacher Tenure Law and whether the School Board breached its contracts with plaintiffs by closing schools and reducing salaries. The School Board filed a cross-motion for summary judgment contending that under the terms of the contracts, the action taken was proper. Following hearing on the cross-motions, the trial court granted summary judgment in favor of plaintiffs on May 22, 1992.
The trial court concluded that the contracts were clear and unambiguous and interpreted the contracts to mean that any decision to reduce teachers' salaries had to be made at the end of the school year. The trial court also read the contracts to require that "[a]fter everything else has been cut, teachers' salaries should be cut last." The trial court then rendered declaratory judgment in favor of plaintiffs declaring that:
1. Defendant had, on the two days Defendant has already closed schools this year, sufficient financial resources available to pay plaintiffs' salaries pursuant to their contracts, and that the Court makes no specific finding regarding any other closure day which has not yet occurred; and
2. Plaintiffs' contracts with Defendant permit a modification in the agreed salary structure and rates only after all other expenditures, except teacher contract salaries, have been reduced or eliminated; and
3. Defendant has breached plaintiffs' contracts with it by closing schools for the two days Defendant has already closed school this school year and reducing plaintiffs' salaries accordingly, and that the Court makes no specific finding regarding any other closure day which has not yet occurred; and
4. The two school day closures enforced so far this school year were not authorized by law, did not result in an improved school schedule, and did result in a loss of salary for plaintiffs, all in violation of La. R.S. 17:225.1; and that the Court makes no specific finding regarding any other closure day which has not yet occurred; and
5. Because of the above findings, no ruling is necessary on plaintiffs' contention that the Defendant's conduct violated their rights under the Louisiana Teacher Tenure Law; and
6. Whether Defendant's announced school closure to take place on May 28, 1992 is violative of plaintiffs' contracts and/or La.R.S. 17:225.1 is an issue specifically *169 not ruled upon herein, but upon which this Court reserves the right to rule at the appropriate time and upon the appropriate motion.
Additionally, the trial court ruled that plaintiffs were entitled to a monetary judgment for loss of earnings due to the two day school closure, plus interest and court costs. From this judgment, the School Board appeals.

SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Summary judgment is a proper procedural method of determining the meaning of a contract when no factual issue is raised. Latter & Blum, Inc. v. Obolensky, 249 So.2d 229 (La.App. 4th Cir.1971).
Legal agreements have the effect of law between the parties, and courts are bound to give legal effect to all such contracts according to the true intent of the parties. Con-Plex, Division of U.S. Industries, Inc. v. Louisiana Department of Transportation & Development, 439 So.2d 567, 570 (La.App. 1st Cir.1983). The parties' intent is to be determined by the words of the contract. When they are clear and explicit, the terms of the contract must prevail, and the court should look no further in determining the intent of the parties. Schroeder, 591 So.2d at 345. Only where the terms of the agreement are unclear, ambiguous or will lead to absurd consequences may the court go beyond the original agreement to determine the true intent of the parties. Con-Plex, 439 So.2d at 570.
We have carefully examined the language of the contracts and we are unable to agree with the trial court that the contract language is so clear and unambiguous as to warrant summary judgment. The relevant contract language at issue states:
Salaries will be determined by highest degree held, number of years of creditable teaching experience, and the salary schedule in effect for the period of employment listed above. It is understood that, in the event sufficient financial resources are not available to maintain the present salary schedule, the Board has the right to make an adjustment within the funds available.
The trial court interpreted these provisions of the contracts to mean that the School Board was not authorized to make salary adjustments based on budget projections and estimates. The trial court concluded that the School Board's conduct in reducing the salaries was "anticipatory" and that the School Board had sufficient financial resources on the closure date to pay salaries. Further, the court interpreted the contract provisions to require that teachers' salaries must be cut last.
In the instant case, the contracts do not define "sufficient financial resources." At oral argument and in briefs to this court, each side presented a differing interpretation of these terms. The School Board argues that according to its projected budget, the board had insufficient financial resources. Contrariwise, plaintiffs argue that "sufficient financial resources" means liquid assets or cash funds on hand. Either definition is plausible in view of the failure of the contracts to clearly state the meaning intended by the parties.
Further illustrating the ambiguity in the contracts, we note that while the contracts state "the Board has the right to make an adjustment within the funds available," the contracts fail to specify when the determination of insufficiency of funds and resulting salary adjustment must be made.
The trial court interpreted the contracts to mean that the School Board could only evaluate its financial condition and cut teachers' salaries after all other budget cuts had been made. Plaintiffs contend on appeal that the School Board's action was premature and could only occur after all other revenues had been spent or exhausted in the school year. *170 The School Board contends it was justified under the contracts to act as soon as the board projected budgetary shortages. However, as we have stated, the employment contracts are unclear in this regard.
Accordingly, because the contract provisions are unclear and susceptible to differing interpretations, we cannot agree with the trial court that the contract dispute at issue herein warrants summary judgment in favor of plaintiffs. Summary judgment is seldom appropriate where there is a question as to what was intended by certain provisions of a contract. Chargois v. Trip-L-Quik, 441 So.2d 45, 47-48 (La.App. 3rd Cir.1983). This court finds that the language of the contracts is ambiguous. Because several interpretations may be given to the language of the contracts, and because the contracts fail to define the terms used in the contracts and fail to specify the time for taking certain action under the contracts, it becomes necessary to look to the intent of the parties to determine the true meaning of the contracts. Because the meaning of the contracts is unclear and there exists a genuine issue of material fact as to the parties' intent, summary judgment is inappropriate.
When a court determines as a matter of law that a contract is ambiguous, then extrinsic (parol) evidence may be used to determine the true intent of the parties, and determining the intent of the parties becomes, in part, a question of fact. In this posture, the granting of a summary judgment is appropriate only if there is no genuine issue as to material fact. See LSA-C.C.P. art. 966(B).
In the present case, we must conclude that the contracts are ambiguous and subject to varying interpretations, involving genuine issues of material fact as to the parties' true intent, rendering summary judgment inappropriate.

DECREE
For the reasons assigned, the summary judgment of the district court is reversed and the case is remanded to the trial court for further proceedings. The plaintiffs are cast for costs of this appeal.
REVERSED AND REMANDED.