775 So.2d 1144 (2000)
NEWTON & ASSOCIATES, INC.
v.
Timothy SHERIDAN and Insurance Adjustment Bureau, d/b/a Due Diligence, Inc.
No. 99-CA-2048.
Court of Appeal of Louisiana, Fourth Circuit.
December 13, 2000.
*1145 W. Paul Andersson, Andrea D. Gilland, Leake, Andersson & Mann, New Orleans, LA, Counsel for Plaintiff/Appellant.
Charles S. Green, Jr., Beahm & Green, New Orleans, LA, Counsel for Defendant/Appellee.
(Court composed of Chief Judge KLEES, ARMSTRONG and KIRBY, JJ.)
KIRBY, J.
Plaintiff, Newton & Associates, Inc., appeals the granting of summary judgment in favor of defendants, Timothy Sheridan and Insurance Adjustment Bureau, d/b/a Due Diligence, Inc.
This breach of contract case stems from a written agreement between Newton & Associates, Inc. (hereinafter referred to as "Newton") and its former employee Timothy Sheridan (hereinafter referred to as "Sheridan".) Sheridan was Vice President of Insurance Services for Newton from July 1996 until he resigned on February 19, 1997. After several months of negotiations regarding the creation of a separate insurance division of Newton, Tom Brenan, Newton's Chief Financial Officer sent a memorandum to Sheridan, which was dated December 20, 1996. This memorandum included a compensation plan offered to Sheridan to manage the separate insurance division, which would become operational only after Sheridan and another employee generated certain fees. On January 15, 1997, Sheridan signed at the bottom of this memorandum, indicating his acceptance of the terms and conditions set forth by Brenan. From this point forward in this opinion, the December 20, 1996 memorandum, which was agreed to by Sheridan on January 15, 1997, will be referred to as "the agreement."
In the agreement, the first paragraph reads:
After reviewing your revised projections for the insurance division and my conversations with Bill Newton, I want to offer you the following outline for the inception of the Newton & Associates Insurance Division, its eventual growth and operating agreement under which the expenses are calculated, as well as the corresponding manager bonus structure.
The second paragraph of this agreement starts with the following statement: "I *1146 propose the following terms and conditions:" Ten items are then listed. Item # 10, which is at issue in this contract dispute, states:
10. Newton & Associates and employee hereby mutually agree:
a. Newton & Associates will impose no limitation on employee's work activity after termination of this agreement, except to [sic] set forth within this paragraph.
b. Employee agrees that should he/ she accept employment within the Parishes of Orleans, Jefferson, St. Bernard, St. Tammany, Placquemine's [sic], St. Charles, St. James, St. John or Tangipahoa within or for a period of one (1) year from the date of termination of this agreement, employee agrees neither to solicit or to accept business directly or indirectly from, or to work for, any client which the employee services or had any connection with while an employee at Newton & Associates. The term "client" shall include any company for or with whom Newton & Associates did business during the employee's employment, or any company from whom Newton & Associates has solicited business during such employment.
When Sheridan resigned from his employment with Newton on February 19, 1997, he had not generated the required fees for the creation of the separate insurance division contemplated in the agreement; therefore, the insurance division was not created during Sheridan's tenure at Newton. Newton alleges that after Sheridan's resignation, he began to commit acts that were in violation of the non-competition clause of the agreement. On April 28, 1997, Newton filed an action for a Temporary Restraining Order, a Preliminary Injunction, a Permanent Injunction, and Damages for Breach of Contract against Sheridan and Insurance Adjustment Bureau d/b/a Due Diligence, Inc. Newton alleged that Due Diligence had assisted Sheridan in his efforts to solicit business from clients of Newton. Newton's request for a preliminary injunction was granted on May 7, 1997.
Discovery commenced after the granting of the preliminary injunction. Newton filed motions to compel on August 1, 1997, February 17, 1998, and on May 22, 1998. Sheridan and Due Diligence also filed a motion to compel on January 30, 1998. The August 1, 1997 motion to compel was granted in part and denied in part on August 19, 1997. The remaining combined motions to compel were scheduled for hearing on September 18, 1998.
Sheridan and Due Diligence filed a motion for summary judgment on June 18, 1998. The trial court granted the motion in open court on September 11, 1998, and signed a written judgment to that effect on September 17, 1998. The hearing on the motions to compel, which was previously scheduled for September 18, 1998, was removed from the trial court's docket following the granting of the motion for summary judgment. Newton filed a motion for new trial, which was denied by the trial court. Newton now appeals the trial court's granting of the motion for summary judgment filed by Sheridan and Due Diligence.
On appeal, Newton argues that the trial court abused its discretion by granting summary judgment before Newton had conducted adequate discovery. Newton also argues that summary judgment is inappropriate because genuine issues of material fact exist.
Summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P.Art. 966. Article 966 was amended in 1996, but the burden of proof remains with the mover to show that no genuine issue of material fact exists. If, as here, the mover will not bear the burden of *1147 proof at trial, his burden on the motion does not require him to negate all essential elements of the plaintiff's claim, but rather to point out that there is an absence of factual support for one or more elements essential to the claim. La.C.C. art. 966 C(2); Fairbanks v. Tulane University, 98-1228 (La.App.4 Cir.3/31/99), 731 So.2d 983. After the mover has met its initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La. C.C.P. art. 966 C(2); Smith v. General Motors Corp., 31-258 (La.App.2 Cir.12/9/98), 722 So.2d 348. If the non-moving party fails to meet this burden, there is no genuine issue of material fact and the mover is entitled to summary judgment. La. C.C.P. art. 966; Schwarz v. Administrators of Tulane Educational Fund, 97-0222 (La.App.4 Cir.9/10/97), 699 So.2d 895. Appellate courts review summary judgments de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate.
As stated above, the trial court scheduled a hearing on the remaining motions to compel for September 18, 1998, but granted Sheridan and Due Diligence's motion for summary judgment on September 17, 1998. Newton argues that if the trial court had delayed ruling on the motion for summary judgment until after compelling Sheridan and Due Diligence to supply sufficient responses to Newton's discovery requests, Newton would have been able to supply the trial court with sufficient evidence of the existence of material issues of fact in this matter. Sheridan and Due Diligence argue that Newton should not be allowed to raise this issue for the first time on appeal, citing this Court's decision in Attardo v. Brocato, 96-1170 (La.App.4 Cir.2/5/97), 688 So.2d 1296, writ denied, 97-0584 (La.4/18/97), 692 So.2d 453.
In the Attardo case, the plaintiff complained that had she been allowed to complete discovery, she would have been able to show the existence of a genuine issue of material fact. In rejecting that argument, this Court noted that plaintiff did not file any affidavits or make any request in an unsworn form under La. C.C.P. art. 967. This Court stated that if the plaintiff had taken such action, the trial court could have refused to act on the defendant's motion for summary judgment until plaintiff's discovery was completed.
The Attardo case is distinguishable from the instant case. Newton raised in the trial court the issue of being allowed to complete discovery before the trial court ruled on the motion for summary judgment. In Newton's memorandum in opposition to the motion for summary judgment, it states that motions to compel were pending before the trial court at the time that the motion for summary judgment was filed, and that the court had scheduled a hearing on these motions for September 18, 1998. Newton also noted that the deposition of Sheridan had not yet been taken, and that his testimony along with complete answers to Newton's discovery would shed light on the relationship between Newton and Sheridan and on Sheridan's actions prior to and subsequent to his resignation date. Newton concedes that it was waiting to depose Sheridan until after a ruling was received on the motions to compel. Newton's position is that the discovery that is the subject of the motions to compel and the subsequent deposition of Sheridan will show that there is an issue of fact as to whether Sheridan was bound by the non-competition clause of the agreement regardless of whether or not he generated the required fees for the creation of the insurance division. Newton also offered the affidavit of Thomas Brenan, its Chief Financial Officer, in support of its position.
This Court has held that although plaintiff should have a fair opportunity to present his claim, there is no absolute right to delay action on a motion for summary judgment until discovery is completed. *1148 Armstead v. Schwegmann Giant Super Markets, Inc., 618 So.2d 1140, 1143 (La. App.4 Cir.1993), writ denied, 629 So.2d 347 (La.1993). However, given the circumstances of the instant case, we find that the trial court erred in ruling on the motion for summary judgment before the previously scheduled hearing on the motions to compel. Because there is the possibility that Newton could prevail on the motions to compel and then the outstanding discovery could reveal a material issue of fact, the granting of summary judgment at this stage of the case was premature.
We disagree with the argument advanced by Sheridan and Due Diligence that no amount of discovery can dispute their position that Sheridan's obligation to comply with the non-competition clause of the agreement was contingent upon the insurance division becoming operational after the generation of certain fees. Because the insurance division never became operational, Sheridan and Due Diligence claim that Sheridan never became bound by the terms of the agreement. At the hearing on Newton's motion for new trial, the trial court indicated that she agreed with this argument and granted summary judgment in favor of Sheridan and Due Diligence for that reason.
We find that the agreement in question is unclear and subject to different interpretations, especially on the critical issue of whether Sheridan became bound by the non-competition clause of the agreement at the time he signed the agreement or whether Sheridan never became bound by any part of the agreement because the insurance division never became operational during his tenure at Newton. Therefore, we find that the trial court erred in concluding that this contract dispute warrants summary judgment in favor of Sheridan and Due Diligence at this time. See, Dixie Campers, Inc. v. Vesely Company, 398 So.2d 1087 (La.1981); Eiche v. East Baton Rouge Parish School Board, 623 So.2d 167 (La.App.1 Cir.1993), writ denied, 627 So.2d 657 (La.1993).
For these reasons, the trial court's granting of summary judgment in favor of Timothy Sheridan and Insurance Adjustment Bureau, d/b/a Due Diligence, Inc. is reversed. This case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
ARMSTRONG, J., concurs in the result.