806 So.2d 1 (2001)
SUNRISE CONSTRUCTION AND DEVELOPMENT CORPORATION, Belair Partnership and Coast Quality Construction Corporation
v.
COAST WATERWORKS, INC.
No. 2000 CA 0303.
Court of Appeal of Louisiana, First Circuit.
June 22, 2001.
Writ Denied January 11, 2002.
*2 Jack E. Morris, Metairie, David C. Loeb, Adrian F. Lapeyronnie, III, Gretna, for Plaintiffs-Appellants Sunrise Construction and Development Corporation, Belair Partnership, and Coast Quality Construction Corporation.
Richard L. Muller, Silvia G. Muller, Covington, for Defendant-Appellee Coast Waterworks, Inc.
Before: GONZALES, FOGG, PARRO, FITZSIMMONS, and GUIDRY, JJ.
GUIDRY, Judge.
Subdivision developers appeal the judgment of the trial court denying their motion for summary judgment seeking specific performance of the obligations of a contract, and granting summary judgment in favor of a private water service company. For the following reasons, we reverse, render in part, and remand.

FACTS AND PROCEDURAL HISTORY
In 1993, a group of businesses, The Huntwyck Company, Belair Partnership ("Belair"), and Coast Quality Construction Corporation ("Coast Quality"),[1] entered into a contract with Coast Waterworks Inc. ("Coast Waterworks") entitled "Service Agreement." In the service agreement, Coast Waterworks agreed to provide sewerage treatment and water services for the Belair Subdivision being developed by the group in St. Tammany Parish. Some years later, Coast Waterworks entered into an Environmental Utility Service Agreement ("EUSA") with the St. Tammany Parish Environmental Services Commission ("Commission"), whereby it agreed to provide sewerage treatment and water services to certain designated localities on *3 behalf of the Commission. In 1998, the EUSA was amended to extend the area covered under the EUSA to encompass additional localities, including the Belair Subdivision. The amended EUSA also authorized Coast Waterworks to collect a water facilities availability fee ("WFAF"). The amended EUSA further provided that Coast Waterworks could apply the WFAF to defray the costs of constructing an additional water well to serve the water needs of the localities listed in the amended EUSA.[2]
Coast Waterworks then wrote a letter informing the group that the Commission had assessed a WFAF of $400.00 per parcel of land and had authorized it to collect the fee to defray the costs of constructing the well. The group paid the fee to Coast Waterworks, while reserving their rights to contest the payment of the WFAF, based on the service agreement.
On October 5, 1998, Sunrise Construction and Development Corporation ("Sunrise"), Belair and Coast Quality (collectively, the "Developers") filed a "Petition for Specific Performance and Damages" against Coast Waterworks. In the petition, the Developers asserted that the collection of the WFAF constituted a breach of the service agreement because Coast Waterworks was obligated to pay the costs associated with constructing the water well under that agreement. The petition further declared Sunrise to be the successor in interest to The Huntwyck Company. Coast Waterworks answered the petition denying the allegations and reconvening for costs incurred in defending itself against the action and for attorney's fees, as provided in the service agreement. The Developers then filed a motion for summary judgment, to which Coast Waterworks responded by filing an exception of no right of action and a cross motion for summary judgment. In response to the exception of no right of action, the Developers filed an amended petition specifying that Belair is a Louisiana partnership in commendam and that Sunrise is a general partner of Belair.
The motions for summary judgment and the exception of no right of action were heard jointly by the trial court and, by a judgment signed October 29, 1999, the trial court denied the Developers' motion for summary judgment, granted Coast Waterworks' motion for summary judgment, and declared moot Coast Waterworks' exception of no right of action. This appeal followed.

ASSIGNMENTS OF ERROR
The Developers raise, as their sole assignment of error on appeal, the trial court's denial of their motion for summary judgment and the granting of Coast Waterworks' motion for summary judgment.

DISCUSSION

Summary JudgmentStandard of Review
On appeal, summary judgments are reviewed de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Brumfield v. Gafford, 99-1712, p. 3 (La.App. 1st Cir.9/22/00), 768 So.2d 223, 225. An appellate court thus asks the same questions as does the trial court in determining whether summary *4 judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Ferguson v. Plummer's Towing & Recovery Inc., 98-2894, pp. 3-4 (La.App. 1st Cir.2/18/00), 753 So.2d 398, 400.
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Naquin v. Louisiana Power & Light Company, 98-2270, p. 4 (La. App. 1st Cir.3/31/00), 768 So.2d 605, 607, writ denied, 00-1741 (La.9/15/00), 769 So.2d 546. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2).
The burden of proof is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).

Service Agreement
In the case before us, the Developers contend that, based on provisions of the service agreement, they were entitled to judgment in their favor. We agree. At issue in this dispute is a provision found under section one of the service agreement, which provides that "Coast [Waterworks] will design, drill and develop a water well on a site provided by Belair in the Belair Subdivision[,]" prior to reaching capacity at the existing wells servicing the Meadows facility and/or the Royal Gardens Condominium facility. In exchange, the Developers agreed to provide a parcel of land within the subdivision to Coast Waterworks on which it would construct the water well. They further committed themselves to the following obligations under the agreement:
[Developers] shall provide 3 phase electrical service to within 200 feet of this site [the parcel of land provided by the Developers]. [Developers] also agree[ ] not to construct or maintain any open ditches within 50 feet of the water well site. Further [Developers] agree[ ] to provide public street access to this site.... [Developers] shall purchase the materials, receive approvals and install an 8" water line 100' north of the southwest corner of Belair Subdivision to the water well site on the Belair property. The line will be stubbed out and capped at the edge of the water well site by [Developers].
Further in the agreement, the Developers agreed to transfer to Coast Waterworks "the water well site, all water distribution lines with fire hydrants, wastewater collection systems, the major force main and the water interceptor line and all appurtenances for these various facilities for the sum of $1.00 per transfer," in addition to servitudes and right-of-ways.
Despite the express language of the contract and other consideration listed in the agreement, Coast Waterworks contends that it is under no obligation to pay for the designing, drilling and developing of the *5 well. According to Coast Waterworks, the only provision in the agreement expressly relating to it paying costs is one pertaining to the installation of all site piping, pumps, storage, fencing, chlorination systems and other appurtenances.
The agreement is detailed as to what obligations fall to what parties. There is no question that Coast Waterworks is obligated, under the terms of the service agreement, to design, drill and develop the new water well. Implicitly included in this obligation is the assumption of any costs associated therewith.
Coast Waterworks now argues that it would be unduly burdensome and unfair to make it pay the costs associated with designing, drilling and developing the well. However, parties are free to contract for any object that is lawful, possible, and determined or determinable. La. C.C. art. 1971. "Freedom of contract" signifies that parties to an agreement have the right and power to construct their own bargains. Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products, Inc., 96-1716, 96-1727, p. 14 (La.7/1/97), 696 So.2d 1373, 1380-1381 (quoting Blake D. Morant, Contracts Limiting Liability: A Paradox with Tacit Solutions, 69 Tul.L.Rev. 715 (1995)). Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. It is not the province of the courts to relieve a party of a bad bargain, no matter how harsh. Gibbs Construction Company, Inc. v. Thomas, 500 So.2d 764, 768 (La.1987).
Accordingly, no matter how burdensome or unfair the contract may seem to Coast Waterworks, the contract clearly obligates it to pay the costs associated with designing, drilling and developing the well, insofar as the well provides water service to the Belair Subdivision.

Water Facilities Availability Fee (WFAF)
We next must consider whether the Commission has the regulatory authority to allow Coast Waterworks to collect the WFAF from the Developers, which is clearly in derogation of the service agreement between Coast Waterworks and the Developers. The Commission's authority to assess a WFAF is found in the following statute in Title 33 of the Louisiana Revised Statutes:
§ 4064.5. Funding

* * *
D. (1) The commission may establish and assess sewerage and water rates to be charged within the unincorporated portion of St. Tammany Parish for sewerage and water facilities, owned, operated, or leased by the commission. The commission may also establish sewerage and water rates to be charged within the unincorporated portion of St. Tammany Parish for such sewerage and water facilities subject to the provisions of Paragraph (2) of this Subsection. Such rates shall be equal and uniform for each grade or class of customers or beneficiaries, shall cover the anticipated costs of providing such sewerage or water service, and may include a facilities availability fee to the record owner of any parcel of real property located within said portion of the parish, whether such property is improved or vacant, any portion of which is located within the distance established by state law or rules or regulations of the commission within which connection to any such facility may be required, which fee is designed to defray the expense of making available to adjoining property owners such *6 facility whether or not such facility is connected to any improvements located on any such parcel of real property....
(2) The commission shall have sole authority to enter into an environmental utility service agreement with any public or private provider of sewerage or water service wherein the purpose of such agreement shall be to assign to the provider certain rights of the commission to plan, finance, construct, purchase, own, let, lease, maintain, operate, improve, or otherwise extend sewerage or water systems within the unincorporated portion of St. Tammany Parish. The commission may adopt rules and regulations relative to the assignment of such rights, establishment of environmental utility service districts, term and requirements of said agreement, and fees associated with the application, administration, supervision, and enforcement of said agreement.
La. R.S. 33:4064.5(D) (emphasis added).
Initially, we note that La. R.S. 33:4064.5(D)(2) does allow the Commission to enter into a EUSA, whereby it can assign certain rights held by the Commission to any public or private provider of utility services. However, this provision must be read in light of La. R.S. 33:4064.5(D)(1) which limits the authority of the Commission in assessing a WFAF to "sewerage and water facilities, owned, operated, or leased by the commission." (emphasis added). In this case, the facility at issue is owned and will be operated by Coast Waterworks, pursuant to its agreement with the Developers. There is no evidence in the record purporting to grant or transfer ownership of the completed facility to the Commission. Therefore, under a plain reading of the statute, the Commission is without authority to assess WFAF on a facility it does not own, operate or lease.
However, provisions of the amended EUSA make the collection of the WFAF from the Developers by Coast Waterworks improper. Specifically, in light of the foregoing discussion regarding the obligations of Coast Waterworks under the service agreement, the following section in the amended EUSA makes it improper for Coast Waterworks to collect the WFAF from the Developers:
16. Other Agreements not Affected. Nothing in this Agreement is intended to interpret or to imply any change or amendment to any other agreements or business policies of Coast [Waterworks] which relate to the contribution of water and sewerage assets by any subdivision developer, building contractor, business or residence owner, lessor, or lessee, etc., and/or which similarly relate to the provision of sewerage service and water service by Coast [Waterworks], which agreements and policies are expressly unaffected by this Agreement.
By this provision in the amended EUSA, the Commission expressly declined to assign any rights in derogation of any previous contractual obligations Coast Waterworks may have undertaken by which it had obtained water or sewerage assets or agreed to provide water or sewerage services. Under the service agreement entered into by Coast Waterworks and the Developers, the Developers contributed several water assets, including the land on which the water well was to be constructed and piping leading to the well; they also executed acts of servitude in favor of Coast Waterworks, with the obligation to execute further acts of servitude in the future as the need may arise, and provided public street access to the site, among other consideration. Accordingly, the amended EUSA, under which authority Coast Waterworks was purporting to act, did not allow for the collection of the WFAF from *7 the Developers, due to the limiting language in the EUSA and the existence of the service agreement.
Finally, Coast Waterworks continues to assert, even on appeal, that the Developers have no right of action to contest the fee assessment which arose pursuant to the amended EUSA, which was an agreement between Coast Waterworks and the Commission, to which the Developers were not a party. Coast Waterworks neither appealed nor answered the appeal reurging this exception, thus it is not properly before us. However, because the exception was mooted by the trial court and we now reverse the decision granting summary judgment in favor of Coast Waterworks, we will address this issue in the interest of justice.
Without delving into the complex intricacies of the entities involved, we simply note that the amended EUSA purports to establish the WFAF "for the record owner of any parcel of real property located in the Service Area whenever any improvement on such property shall require connection in any way or manner...", not just for builders, as argued by Coast Waterworks. Furthermore, as the above quoted section 16 of the amended EUSA indicates, the rights of a party to a previously negotiated agreement, in whatever capacity, were expressly unaffected by the execution of the amended EUSA. Accordingly, the Developers have an interest in this matter and this action is properly maintained.

CONCLUSION
For the foregoing reasons, we reverse the judgment of the trial court granting summary judgment in favor of Coast Waterworks. We render judgment in this matter granting summary judgment in favor of the Developers. The record does not indicate how much the Developers paid under protest to Coast Waterworks under the WFAF assessment, nor is there information regarding the attorney fees attributable to this litigation that may be due under the service agreement. Therefore, we remand for the trial court to receive such evidence and determine the WFAF amounts to be refunded by Coast Waterworks, as well as reasonable attorney's fees to be paid. All costs of this appeal are assessed to Coast Waterworks.
REVERSED, RENDERED IN PART, AND REMANDED.
PARRO, J., concurs.
FITZSIMMONS, J., dissents and assigns reasons.
FITZSIMMONS, Judge, dissenting in part with reasons.
I respectfully dissent from the majority decision to grant summary judgment in favor of Sunrise Construction and Development Corporation, Belair Partnership and Coast Quality Construction Corporation (collectively "Developers"). While agreeing with the court's reversal of a summary judgment in favor of Coast Waterworks, Inc., there remain too many material issues of fact to warrant a summary judgment in favor of either party. The impact of the governmental service agreement on a prior private service agreement with the developers of Belair Subdivision is unclear. The fee in contention appears to be limited to charges for an additional water well; however, the necessity and applicability of a second water well to service Belair Subdivision remains an unresolved factual question.
Accordingly, I join this court in its reversal of the trial court's grant of summary judgment in favor of Coast Waterworks, Inc.; however, I would affirm the *8 trial court's denial of summary judgment in favor of the developers.
NOTES
[1] According to the "Service Agreement," the three businesses comprising the partnership functioned in the following manner within the partnership:

Whereas, Belair Partnership owns property located in Slidell, Louisiana which is the proposed Belair Subdivision. Whereas, Coast Quality Construction Corporation is engaged in the business of subdivision development, including building and selling homesites. Whereas, The Huntwyck Company is constructing the homes in the Belair Subdivision. Whereas, these companies collectively are developing the Belair Subdivision in Slidell, Louisiana consisting initially of between 750 to 800 lots with a potential for an additional 320 lots if the land is purchased for these additional lots.
[2] Coast Waterworks was authorized to collect a WFAF from the record owners of lots in the service area mentioned in the original EUSA. However, the WFAF assessed under the original EUSA was for $250.00 per parcel of land, based on the costs of drilling a water well to service the covered localities. The additional $150.00 charged for the added localities under the amended EUSA was due to the need to drill a new well, at additional costs, to handle the water demands of the added localities.