STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2019 CA 0196

ROSS AND WALLACE PAPER PRODUCTS, INC.

VERSUS

TEAM LOGISTICS, INC., AND PITTSBURGH LOGISTICS SYSTEMS INC.
D/B/A PLS LOGISTICS SERVICES

JUDGMENT RENDERED: **'JUL 0 8 2020**

* * * * * * *

Appealed from the
Twenty-First Judicial District Court
In and for the Parish of Tangipahoa • State of Louisiana
Docket Number 2016-407 • Division "E"

The Honorable Brenda B. Ricks, Judge Presiding

* * * * * * *

John C. Funderbunk
Elisabeth Quinn Prescott
Mallory McKnight Fuller
Baton Rouge, Louisiana

ATTORNEYS FOR APPELLANT
DEFENDANT—Pittsburgh Logistics
Systems, Inc. d/b/a PLS Logistics
Services

Benjamin J. Steinberg, *pro hac vice*
Kristine A. Grega, *pro hac vice*
Jeffrey P. Myers, *pro hac vice*
Warrendale, Pennsylvania

Glen R. Galbraith
Kenneth LeVergene Ross
Hammond, Louisiana

ATTORNEYS FOR APPELLEE
PLAINTIFF—Ross and Wallace Paper
Products, Inc.

* * * * * * *

BEFORE: GUIDRY, MCCLENDON, WELCH, THERIOT, AND HOLDRIDGE, JJ.

Guidry J concurs in result

Theriot J Agrees with the result.

McClendon J. dissents and assigns reasons

Holdridge J. dissents and assigns reasons

**WELCH, J.**

In this breach of contract suit, the defendant, Pittsburgh Logistics Systems, Inc. d/b/a PLS Logistics Services ("PLS"), appeals the trial court's judgment rendered in favor of the plaintiff, Ross and Wallace Paper Products, Inc. ("Ross and Wallace"), following a bench trial on the merits. Based on the foregoing, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

Ross and Wallace is a paper company that operates a factory in Hammond, Louisiana, manufacturing paper products, including paper bags. Ross and Wallace purchased a machine used to produce "four-pound" paper bags from Cougar Paper Corporation in San Bernadino, California in July 2015. Ross and Wallace contracted with PLS, a third party freight broker/logistics company, to ship its newly purchased paper bag machine from California to Louisiana. Ross and Wallace paid PLS for a "full truck" transport, *i.e.*, an 18-wheeler tractor-trailer with no other cargo transported in the bed of the trailer with the paper bag machine.[1]

PLS contracted with another company, Team Logistics, Inc., to ship the paper bag machine to Louisiana. Prior to the shipment, the CEO of Ross and Wallace, Kenneth Ross, and its maintenance manager, Kenneth Klingman, traveled to California to personally inspect the paper bag machine, loaded it onto the bed of the tractor-trailer, and secured it at the front of the bed of the trailer. When the 18-wheeler tractor-trailer transporting the paper bag machine arrived in Hammond, the machine was unsecured, was at the rear of the bed of the trailer, and was present along with other cargo. The machine had sustained visible damage in transit and was no longer in working order. Ross and Wallace received a repair estimate

---

[1] The terms "full truck" or "full load" or "designated load" or "designated truck" or "non-LTL (not less than truckload)" were used interchangeably throughout the trial to indicate a truck load that is for the sole purpose of hauling only the freight of one customer.

quote from Custom Machine Works, Inc. in the amount of $19,000.00 to $19,500.00, but elected to repair the machine in-house to reduce costs, for $16,660.00.

Thereafter, Ross and Wallace filed a petition for damages against PLS and Team Logistics on February 11, 2016, alleging breach of contract and seeking damages for labor and materials used to repair the damaged paper bag machine, lost use of the machine during repairs, lost profits, and lost opportunities.

PLS answered the petition, asserting general denials, except admitting that Ross and Wallace purchased a paper bag machine from Cougar Paper Corporation in San Bernadino, California and that the paper bag machine suffered damage during shipment. PLS denied, however, that a contract existed between it and Ross and Wallace to ship the paper bag machine from California to Louisiana. PLS further raised the affirmative defense that Ross and Wallace's claims against PLS were barred, in whole or in part, because the alleged damages were caused by the act or omissions of a third party (namely, Team Logistics) for whom PLS is not liable.

Team Logistics failed to file an answer to the February 11, 2016 petition; thereafter, Ross and Wallace moved for the entry of a preliminary default against Team Logistics, which the trial court granted on May 17, 2016. Ross and Wallace then moved to confirm the preliminary default against Team Logistics. The trial court confirmed the preliminary default, entering judgment in favor of Ross and Wallace and against Team Logistics, Inc. in the total amount of $36,810.00, together with interest from the date of judicial demand (February 11, 2016) and costs, in a judgment signed on August 22, 2016.[2]

---

[2] No party appealed from the August 22, 2016 confirmation of default judgment. A judgment of default against one defendant, not appealed from, is held to be final. **Green Tree Servicing, LLC v. Edwards**, 2017-214 (La. App. 5th Cir. 11/15/17), 232 So. 3d 688, 696. Accordingly, the August 22, 2016 confirmation of default judgment resolved all of Ross and Wallace's claims against Team Logistics, who is no longer a party to this suit.

On October 4, 2018, the trial court held a bench trial on the merits of Ross and Wallace's claims against PLS. At the conclusion of the bench trial, the trial court held the record open for fifteen days to allow the parties to submit written closing arguments in the form of findings of fact and conclusions of law. Thereafter, the trial court issued reasons for judgment on October 29, 2019. The trial court rendered judgment in accordance therewith on November 26, 2018, in favor of Ross and Wallace and against PLS, awarding Ross and Wallace $46,660.00 in damages, plus all costs of the proceedings.[3] PLS now suspensively appeals the November 26, 2018 judgment.

## LAW AND DISCUSSION

***Assignment of Error 1: Federal Preemption of State Law Regarding Liability to a Shipper for Losses Related to the Interstate Shipment of Goods; Conflicts of Law***

PLS argues that the trial court erroneously applied Louisiana State contract law to Ross and Wallace's claims against it, versus federal law governing a motor carrier's liability to a shipper for the loss of, or damage to, an interstate shipment of goods. The issue of whether federal law preempts state law is a question of law that must be reviewed *de novo* by this court. See **Jackson v. City of New Orleans**, 2012-2742 (La. 1/28/14), 144 So. 3d 876, 882; **Dahiya v. Talmidge Int'l Ltd.**, 2005-0514 (La. App. 4th Cir. 5/26/06), 931 So. 2d 1163, 1167, writ denied, 2006-1913 (La. 12/8/06), 943 So. 2d 1088.

---

[3] The November 26, 2018 judgment is a valid, final judgment that is subject to our appellate jurisdiction. See La. C.C.P. art. 2083(A); **Rose v. Twin River Development, LLC**, 2017-0319 (La. App. 1st Cir. 11/1/17), 233 So. 3d 679, 683. The judgment is precise, definite, and certain. See **Laird v. St. Tammany Parish Safe Harbor**, 2002-0045, 2002-0046 (La. App. 1st Cir. 12/20/02), 836 So. 2d. 364, 365. The November 26, 2018 judgment contains decretal language and names the party in favor of whom the ruling is ordered (Ross and Wallace), the party against whom the ruling is ordered (PLS), and the relief that is granted or denied ($46,660.00 in damages, plus costs). See **DeVance v. Tucker**, 2018-1440 (La. App. 1st Cir. 5/31/19), 278 So. 3d 380, 382. It is evident from the language of the November 26, 2018 judgment, without reference to other documents in the record, that Ross and Wallace's claims against PLS are dismissed, as Ross and Wallace was awarded the damages that it sought in its petition. See **Advanced Leveling & Concrete Sols. v. Lathan Co., Inc.**, 2017-1250 (La. App. 1st Cir. 12/20/18), 268 So. 3d 1044, 1046.

4

The Interstate Commerce Act, 49 U.S.C. § 11706 *et seq.*, contains several provisions governing a motor carrier's liability to a shipper for the loss of, or damage to, an interstate shipment of goods. These provisions are commonly referred to collectively as the Carmack Amendment, 49 U.S.C. § 14706 *et seq.* See **Grigg v. SAIA Motor Freight Line, Inc.**, 30,293 (La. App. 2nd Cir. 2/25/98), 709 So. 2d 896, 898. The Carmack Amendment established a uniform national liability policy for interstate carriers. **New York, New Haven & Hartford RR Co. v. Nothnagle**, 346 U.S. 128, 131, 73 S. Ct. 986, 988, 97 L. Ed. 1500 (1953).

The Carmack Amendment governs "motor carriers" and "freight forwarders" and provides the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier and preempts all state common law claims against such carrier and freight forwarders. 49 U.S.C. § 14706(a)(1) and (2). See also **Hoskins v. Bekins Van Lines**, 343 F.3d 769, 778 (5th Cir. 2003); **Hughes Aircraft Co. v. N. Am. Van Lines, Inc.**, 970 F.2d 609, 613 (9th Cir. 1992).

However, the Carmack Amendment does not apply to "brokers." See **Chubb Grp. of Ins. Companies v. H.A. Transp. Sys., Inc.**, 243 F. Supp. 2d 1064, 1068-69 (C.D. Cal. 2002); **Adelman v. Hub City Los Angeles Terminal, Inc.**, 856 F. Supp. 1544, 1547-48 (N.D. Ala. 1994). Pursuant to 49 U.S.C. § 13102(2):

> The term "broker" means a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.

Consequently, courts have held that brokers may be held liable under state tort or contract law in connection with shipments. See **Chubb Grp. of Ins. Companies,**

243 F. Supp. 2d at 1069, and **Corbin v. Arkansas Best Corp.**, No. 2:08CV00006 JLH (E.D. Ark. Mar. 16, 2009), 2009 WL 707407, at *3 (unpublished).

It is undisputed, and PLS has asserted throughout the record, that PLS was a broker at all times pertinent to the instant matter. In its reasons for judgment, the trial court held: "In this matter, PLS asserts that it was merely a broker, to which this Court would agree. However, the further assertion that any claim in this Court would be preempted by the Carmack Amendment would be contradicted by the cases." Like the trial court, we hold that the Carmack Amendment does not apply, and PLS may be held liable under Louisiana State contract law for the claims asserted against it by Ross and Wallace.

PLS further argues that the trial court failed to apply federal law to the facts of this case pursuant to a conflicts of law analysis under La. C.C. art. 3515 *et seq.* PLS contends that under a conflicts of law analysis, federal law (*i.e.*, the Carmack Amendment) applies to the facts of this case instead of Louisiana state contract law. This court reviews conflicts of law questions *de novo*. See **Jackson**, 144 So. 3d at 882; **Wooley v. Lucksinger**, 2006-1140 (La. App. 1ˢᵗ Cir. 12/30/08), 14 So. 3d 311, 358-59, writs granted, 2009-0586, 2009-0585, 2009-0584, 2009-0571 (La. 12/18/09), 23 So. 3d 951, 952, 953, aff'd in part, rev'd in part, 2009-0571 (La. 4/1/11), 61 So. 3d 507.

Louisiana's Conflicts of Law provisions afford the balancing of competing interests between states. The objective of those provisions is to identify the state whose policies would be most seriously impaired if its laws were not applied to the issue at hand. La. C.C. arts. 3515 and 3537; **Champagne v. Ward**, 2003-3211 (La. 1/19/05), 893 So. 2d 773, 786. The threshold question in determining the application of La. C.C. art. 3515 *et seq.* is whether there is a true conflict, a false conflict, or no conflict. See **Champagne**, 893 So. 2d at 786.

6

The supremacy clause of the United States Constitution governs federal preemption of state law. See U.S. Const. art. VI, cl. 2; **Baca v. Sabine River Auth.**, 2018-1046 (La. App. 1st Cir. 12/27/18), 271 So. 3d 223, 229, writ denied, 2019-0149 (La. 3/18/19), 267 So. 3d 95. The Louisiana Code of Civil Procedure governs the raising of affirmative defenses, including federal preemption. See La. C.C.P. arts. 1003 and 1005. As noted by Ross and Wallace in their appellee brief, Louisiana's conflicts of law rules would apply to federal law if a Louisiana court was deciding whether to apply United States law versus the law of a foreign country. Accordingly, under our *de novo* review, we find that there is no true conflicts of law issue and that the arguments raised by PLS on appeal encompass federal preemption of state law. This assignment of error is without merit.

### Assignments of Error Nos. 2 and 3: Is PLS solidarily liable with Team Logistics? Was PLS's Obligation Extinguished?

PLS argues that the trial court erred in finding it solidarily liable with Team Logistics for the entirety of Ross and Wallace's damages. PLS avers that there is no evidence that PLS or Team Logistics ever intended that the obligation to transport Ross and Wallace's paper bag machine from California to Louisiana was a solidary obligation. PLS contends that it was not responsible for the obligation of Team Logistics regarding the actual shipment of the paper bag machine.

PLS further argues that its only obligation to Ross and Wallace was to *arrange* a full truck shipment of the paper bag machine, while Team Logistics' obligation to Ross and Wallace was to physically *ship* the paper bag machine in a full truck transport. Thus, PLS contends that its obligation was separate from that of Team Logistics. Upon awarding the Ross and Wallace shipment to Team Logistics, PLS averred that it performed its obligation to Ross and Wallace, which was extinguished by the substitution of Team Logistics as the contracting party (known as a *promesse de porte-fort*). See La. C.C. arts. 1786, 1787, and 1854.

7

Louisiana Civil Code article 1977 describes a *promesse de porte-fort*: "The object of a contract may be that a third person will incur an obligation or render a performance. The party who promised that obligation or performance is liable for damages if the third person does not bind himself or does not perform." In a *promesse de porte-fort*, as long as the third party does not bind himself, the original obligor is the only obligor; however, the moment the third party binds itself or renders performance, the obligor is released from the underlying obligation. See Revision Comments--1984(b) to La. C.C. art. 1977.

Conversely, La. C.C. art. 1821 pertinently provides that an obligor and a third person may agree to an assumption by the latter of an obligation of the former, and unless released, the obligor remains solidarily bound with the third person. **Crosstex Energy Servs., LP v. Texas Brine Co., LLC**, 2018-1213 (La. App. 1st Cir. 7/11/19), 2019 WL 3049762, at *4 (unpublished), writ denied, stay denied, 2019-01126 (La. 7/17/19), 277 So. 3d 1180. Louisiana Civil Code article 1821 states:

> An obligor and a third person may agree to an assumption by the latter of an obligation of the former. To be enforceable by the obligee against the third person, the agreement must be made in writing.
>
> The obligee's consent to the agreement does not effect a release of the obligor.
>
> The unreleased obligor remains solidarily bound with the third person.

Under La. C.C. art. 1821, an obligor and a third party can agree to the assumption of an obligation; however, to be enforceable against the obligee, the agreement must be made in writing. Failure to do so results in solidary liability as between the obligor and the third party assignee. See La. C.C. art. 1821.

The object of the respective contracts is the key difference between La. C.C. arts. 1977 and 1821. Under La. C.C. art. 1977, the third party incurs the

8

obligation, whereas La. C.C. art. 1821 contemplates that an obligor—owing an existing obligation to the obligee—separately agrees with a third party that the third party will assume the obligor's obligation and render performance to the obligee.

The application of La. C.C. arts. 1977 or 1821 to this case depends upon whether the object of the contract between Ross and Wallace contemplated performance of the object by a third party. The evidence indicates that Ross and Wallace (the obligee) entered into a contract with PLS (the obligor). The contract between Ross and Wallace and PLS was confected via email and telephone conversations. The contract was for the shipment of a paper bag machine on a "full truck" or "full size designated truck" from San Bernadino, California to Hammond, Louisiana. The parties agreed on a price of $2,900.00 and a shipment date.

The evidence also indicates that PLS contracted with Team Logistics (the third party) to have Ross and Wallace's paper bag machine shipped on a "full truck" or "full size designated truck" from San Bernadino, California to Hammond, Louisiana.[4]

The evidence further indicates that the contract between Ross and Wallace and PLS was breached when the paper bag machine arrived in Hammond, Louisiana, unsecured and damaged in the bed of an 18-wheeler tractor-trailer, along with other cargo.

At trial, the general manager of Ross and Wallace, Phyllis Love, testified that PLS never informed Ross and Wallace that a party other than PLS was shipping the paper bag machine. Love testified that while she understood that PLS

---

[4] PLS sent Team Logistics a written award notification. The award notification included the specifics of the Ross and Wallace shipment, including the location and origin of destination, the times for pick-up and drop-off, the type of machinery to be used, the date that the award was given, the rate for the payment, and that the load was a to be hauled on a full truck. PLS also required Team Logistics to obtain a certificate of insurance to confirm that any cargo it hauled would be insured, which Team Logistics provided.

was a broker and not a carrier, she had no knowledge of what carrier actually shipped the paper bag machine until she received a claims form from PLS after the damage to the machine occurred. Love further testified that PLS always billed Ross and Wallace directly for the shipment of goods.

The evidence indicates that the object of the contract between Ross and Wallace and PLS was for the shipment of the paper bag machine from California to Louisiana via a "full load" truck. There is no evidence that the contract contemplated performance of the object by a third party. Furthermore, Ross and Wallace and PLS were the only parties involved in the contract negotiations, and Ross and Wallace was not aware that Team Logistics would be shipping its paper bag machine. Since the object of the contract did not contemplate shipment by a third party, the contract is not a *promesse de porte-fort* as described in La. C.C. art. 1977. Even assuming *arguendo* that the contract was a *promesse de porte-fort*, PLS would still be liable to Ross and Wallace for the damages to its paper bag machine. In a *promesse de porte-fort*, the original promisor is not released from the obligation if the third party does not perform as contracted. La. C.C. art. 1977. Since Team Logistics did not provide Ross and Wallace with a dedicated "full truck" as required by the original obligation, which resulted in damages to Ross and Wallace's paper bag machine, PLS is not released from its obligation and would be liable to Ross and Wallace under La. C.C. art. 1977.

Thus, La. C.C. art. 1821 applies to the instant case. When PLS (the obligor) and Team Logistics (the third party) entered into a contract to ship the paper bag machine from California to Louisiana, Team Logistics assumed PLS's obligation. See La. C.C. art. 1821. The agreement between PLS (the obligor) and Team Logistics (the third party) did not require Ross and Wallace's (the obligee) consent

10

or knowledge to be effective.[5] See La. C.C. art. 1821. However, PLS failed to assign its obligation in such a way to release PLS from solidary liability with its third party assignee, Team Logistics. While La. C.C. art. 1821 permits an obligor and third party to agree to the assumption of an obligation by the third party, to be enforceable against the obligee, the assumption must be in writing. Here, PLS and Team Logistics did not reduce the assumption of the obligation to writing. The failure to do so results in solidary liability between the original obligor and the third party assignee. La. C.C. art. 1821.

Under Louisiana law, "[a]n obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee." La. C.C. art. 1794. The Louisiana Supreme Court has held that a solidary obligation exists when the obligors (1) are obliged to the same thing, (2) so that each may be compelled for the whole, and (3) when payment by one exonerates the other from liability toward the creditor. **Bellard v. Am. Cent. Ins. Co.**, 2007-1335 (La. 4/18/08), 980 So. 2d 654, 663-64. An obligee, at his choice, may demand the whole performance from any of his solidary obligors, and a solidary obligor may not request division of the debt. La. C.C. art. 1795. Among solidary obligors, each is liable for his virile portion. If the solidary obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary; however, where the solidary obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obligor. A

---

[5] First, Ross and Wallace stood to lose nothing because PLS was not released from its obligation by Team Logistics' assumption thereof. Second, unless Ross and Wallace had an interest in performance only by PLS (which there is no evidence of in the record)—such as when the obligation is strictly personal on the part of the obligor—under La. C.C. art. 1855, performance may be rendered by a third party, even against the will of the obligee. See Saul Litvinoff and Ronald J. Scalise, Jr., "Agreement entered into by the obligor," **Law of Obligations** § 10.11, 5 LA. CIV. L. TREATISE (2d ed. Dec. 2019 Update). "Freedom of contract" signifies that parties to an agreement have the right and power to construct their own bargains. It is not the province of the courts to relieve a party from a bad bargain. See **Sunrise Const. & Dev. Corp. v. Coast Waterworks, Inc.**, 2000-0303 (La. App. 1st Cir. 6/22/01), 806 So. 2d 1, 5, writ denied, 2001-2577 (La. 1/11/02), 807 So. 2d 235.

solidary obligor who has rendered the whole performance, though subrogated to the right of the obligee, may claim from the other obligors no more than the virile portion of each. La. C.C. art. 1804. See **Giles v. Oak Lane Mem'l Park, LLC,** 2019-0357 (La. App. 1st Cir. 11/15/19), 290 So. 3d 685, 689.

Because PLS and Team Logistics did not agree to Team Logistics' assumption of PLS's obligation to Ross and Wallace in writing, PLS is not released from its obligation to Ross and Wallace and remains solidarily bound with Team Logistics. See La. C.C. art. 1821. Accordingly, PLS and Team Logistics could be liable for the whole performance. See La. C.C. art. 1794; **Bellard,** 980 So. 2d at 663-64. Between PLS and Team Logistics, each is liable for its virile portion, which in this instance, is an equal portion. See La. C.C. art. 1804.

Based on the foregoing, these assignments of error are without merit.

### *Assignment of Error No. 4: Damages*

PLS contends that the trial court erred in awarding lost profit damages to Ross and Wallace. PLS argues that there is no evidentiary support for the trial court's calculation of damages, which it alleges failed to account for the difference in production between Ross and Wallace's new paper bag machine versus its existing machine.

Actual damages arising from a breach of contract must be proven; they cannot be merely speculative or conjectural. It must appear reasonably certain that the amount of damages rests upon a certain basis. Such proof need be only by a preponderance of the evidence; proof by direct or circumstantial evidence is sufficient to constitute a preponderance when, taking the evidence as a whole, such proof shows that the facts or causation sought to be proved is more probable than not. The sufficiency of proof of damages must be determined in relation to the particular contract at issue and the circumstances surrounding its breach. The question of the certainty of proof of damages becomes a matter for decision in each

12

individual case. **ODECO Oil & Gas Co. v. Nunez,** 532 So. 2d 453, 458 (La. App. 1st Cir. 1988), writ denied, 535 So. 2d 745 (La. 1989) (citing **Hall v. Arkansas-Louisiana Gas Company,** 368 So. 2d 984, 991 (La. 1979)).

Loss of profit is an item of damages recoverable for breach of contract. La. C.C. art. 1934. The general rule is that while damages for loss of profits may not be based on speculation and conjecture, such damages need be proven only within a reasonable certainty. Broad latitude is given in the proving of lost profits as damages. **Landry v. Bourque,** 460 So. 2d 33, 34 (La. App. 1st Cir. 1984), writ denied, 464 So. 2d 1378 (La. 1985).

As a determination of fact, a judge's or jury's assessment of quantum, or the appropriate amount of damages, is one entitled to great deference on review. Because the discretion vested in the trier of fact is so great, and even vast, an appellate court should rarely disturb an award on review. **Menard v. Lafayette Ins. Co.,** 2009-1869 (La. 3/16/10), 31 So. 3d 996, 1007.

The trial court awarded Ross and Wallace a total of $46,660.00 in damages. In its reasons for judgment, the trial court held:

> [Ross and Wallace] asserts damages in the amount of $46,660, including $16,660 for the cost of repairs and $30,000 in lost profits. The $16,660 estimate was provided by Mr. Klingman, the "in-house" repairman. This estimate was stated to be the minimal estimate needed to return the machine to working condition without improvements. Phyllis Love, General Manager of [Ross and Wallace], stated that profit margins for this machine could range from $150 - $800 per day, with this machine being on the higher end of that scale because it was a three-color machine. [Ross and Wallace] additionally states that the machine would have been out of service for 10 weeks, 6 weeks for parts and 4 weeks for repairs. Five working days over 10 weeks is 50 working days that the machine was out of use. Using the $600 estimate that was provided, this figure would come to $30,000. This Court believes that the estimates provided by [Ross and Wallace] are reasonable, and additionally, no evidence was submitted to contravene [Ross and Wallace's] estimate, and therefore both the

estimate for repairs and estimate for lost profits will be accepted.

Based on the documentary and testimonial evidence presented by Ross and Wallace at trial, the trial court found that Ross and Wallace proved its actual damages by a preponderance of the evidence and proved its lost profits within reasonable certainty. See **ODECO Oil & Gas Co.**, 532 So. 2d at 458; **Landry**, 460 So. 2d at 34. As stated by the trial court, PLS did not contravene Ross and Wallace's damage estimates for repairs and lost profits of the new paper bag machine. Based on our extensive review of the record on appeal, we cannot say the trial court abused its discretion in awarding Ross and Wallace $46,660.00 in damages. Accordingly, this assignment of error is without merit.

## DECREE

Based on the foregoing, the trial court's November 26, 2018 judgment is hereby affirmed. All costs of the proceedings in this court are assessed to Pittsburgh Logistics Systems, Inc. d/b/a PLS Logistics Services.

**AFFIRMED.**

# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# 2019 CA 0196

# PITTSBURGH LOGISTICS SYSTEMS, INC. d/b/a PLS LOGISTICS SERVICES

# VERSUS

# ROSS AND WALLACE PAPER PRODUCTS, INC.

*PMc: by JEW*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## McCLENDON, J., DISSENTS.

I disagree with the majority's conclusion that the November 26, 2018 judgment is final. The judgment grants relief to Ross & Wallace by rendering a money judgment in favor of Ross and Wallace and against PLS. However, the judgment does not contain appropriate decretal language dismissing PLS or Team Logistics, nor does it dismiss any claim. Thus, it is unclear from the judgment whether the entirety of Ross & Wallace's case is disposed of or dismissed by the judgment, a determination which must be evident from the language of the judgment without resort to pleadings filed or reference to other documents in the record. **Accardo v. Chenier Prop. Partners, LLC**, 2010-0825 (La.App. 1 Cir. 10/29/10), 2010 WL 4272906 (unpublished opinion). When it is impossible to ascertain what parties or claims may have been dismissed by a judgment without referring to and reviewing other judgments and pleadings in the record, the judgment is not precise, definite, or certain. **Joseph v. Ratcliff**, 2010-1342 (La.App. 1 Cir. 3/25/11), 63 So.3d 220, 224; See also **Costanza v. Snap-On Tools**, 2013-0332 (La.App. 1 Cir. 3/5/14), 2014 WL 886021 (unpublished opinion) ("As no party is dismissed by the judgment, it is unclear from the judgment whether the entirety of plaintiffs' case is disposed of or dismissed by the judgment"). Therefore, the November 26, 2018 judgment is not a final appealable judgment and I find that this court lacks subject matter jurisdiction.

ROSS AND WALLACE PAPER
PRODUCTS, INC.

VERSUS

TEAM LOGISTICS, INC., AND
PITTSBRUGH LOGISTICS
SYSTEMS INC. D/B/A PLS
LOGISTICS SERVICES

NO. 2019 CA 0196

COURT OF APPEAL

FIRST CIRCUIT

STATE OF LOUISIANA

**HOLDRIDGE, J., dissenting.**

I respectfully dissent. This is a contract case and the terms of the contract establishes the law between the parties according to the general rules of contract interpretation. See La. C.C. arts. 2045-2057; Waterworks District No. 1 of Desoto Parish v. Louisiana Dep't of Public Safety & Corrections, 2016-0744 (La. App. 1 Cir. 2/17/17), 214 So.3d 1, 5, writ denied, 2017-0470 (La. 5/12/17), 219 So.3d 1103. In this case, it appears from the evidence and the terms of the contract in question that Ross and Wallace was contracting with Pittsburgh Logistics Systems Inc. (PLS) to act as a broker to find someone to transport a paper bag machine to its Hammond plant. Even if this court finds that the terms of the contract in question were not clear, we must attempt to determine the common intent of the parties. See La. C.C. art. 2045; Miller v. Miller, 44,163 (La. App. 2 Cir. 1/14/09), 1 So.3d 815, 817. Determination of the intent of the parties becomes, in part, a question of fact. Eiche v. East Baton Rouge Parish School Board, 623 So.2d 167, 170 (La. App. 1 Cir. 1993), writ denied, 627 So.2d 657 (La. 1993).

The record reveals that Ross and Wallace only contracted with Pittsburgh Logistics Systems, Inc. d/b/a PLS Logistics Services (PLS) as a broker to obtain someone to transport its new paper bag machine to its plant in Hammond, Louisiana. PLS did not agree to transport the machine and it is clear from the record that Ross and Wallace knew, in fact, that it was not PLS that was transporting the paper bag machine but it was, in fact, Team Logistics. While the

majority gives validity to the claim by the plaintiff that it did not know Team Logistics was transporting the paper bag machine, the evidence clearly shows that the CEO and maintenance manager went to California and personally loaded the paper bag machine on the truck owned by Team Logistics. In its petition, the plaintiff alleges it contracted with Team Logistics to transport the paper bag machine to Louisiana. Furthermore, Ross and Wallace sued Team Logistics for the damage to their paper bag machine in transit and obtained a final default judgment against them. One can only presume that Ross and Wallace obtained a final default judgment against Team Logistics because it is clear from the record that the only party responsible for any damage to the paper bag machine in transit was Team Logistics. PLS did not contractually assume any responsibility for any damage that might occur in transit to the paper bag machine nor is there any provision wherein PLS was required to insure the machine in transit. Clearly, all parties to the contract knew that PLS was only a broker and not the transporter because there is nothing in the record to show that Ross and Wallace did anything other than contract with PLS to arrange shipment of the paper bag machine. Similarly, there is no provision in the contract or in the record between the parties wherein PLS agreed to be liable in solido with Team Logistics for any damage that occurred to the paper bag machine in transit. Civil Code article 1796 states "[s]olidarity of obligation shall not be presumed. A solidary obligation arises from a clear expression of the parties' intent or from the law." There is no clear expression of the parties' intent that a solidary obligation was created between PLS and Team Logistics. Therefore, since the plaintiff has failed to offer any proof of a contractual obligation of PLS to either be responsible for any damage to the paper bag machine while in transit or that it was liable in solido with Team Logistics for any damage, there is no legal basis for a judgment to be rendered against PLS and the trial court's judgment should be reversed.